**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

---

LOUIS WILLIAM PARREANT, Civil No. 00-2014 (JRT/JGL)

Plaintiff,

v.

**MEMORANDUM OPINION AND ORDER**

JOHN RUDOLPH SCHOTZKO,

Defendant.

---

Louis William Parreant, Prairie Correctional Facility, 445 South Munsterman, Appleton, MN 56208, *pro se*.

Gregory W. Deckert, BASSFORD, LOCKHART, TRUESDELL, & BRIGGS, P.A., 3550 Multifoods Tower, 33 South Sixth Street, Minneapolis, MN 55402, for defendant.

Plaintiff Louis Parreant, an inmate at the Prairie Correctional Facility ("PCF") in Appleton, Minnesota, seeks relief under 42 U.S.C. § 1983 for alleged violations of his rights under the Eighth Amendment to the U.S. Constitution. Defendant John Schotzko is a doctor who treated plaintiff at PCF. Defendant has filed a motion to dismiss the case, and for summary judgment. Plaintiff has filed motions seeking a temporary restraining order, a preliminary injunction, and summary judgment.

FILED Sept. 30, 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD. ______
DEPUTY CLERK ______

The matter is before the Court on objections by both plaintiff and defendant to the Report and Recommendation of United States Magistrate Judge Jonathan G. Lebedoff dated August 6, 2001, as well as appeals by defendant to the Order of Magistrate Judge Lebedoff dated August 6, 2001. The Court has conducted a *de novo* review of the objections pursuant to 28 U.S.C. § 636 (b)(1)(C) and D. Minn. LR 72.1(c)(2). For the reasons set forth below, the Court adopts the Report and Recommendation of the Magistrate Judge. Accordingly, defendant's motions to dismiss and for summary judgment are denied, and plaintiff's motions for a temporary restraining order, a preliminary injunction, and summary judgment are denied.

The Court has also reviewed a second motion by plaintiff for a temporary restraining order. This motion was filed prior to issuance of the Magistrate Judge's Report and Recommendation, but before defendant had an opportunity to respond. All briefs on this motion have now been filed. For the reasons set forth below, the Court denies plaintiff's second motion for a temporary restraining order.

## BACKGROUND

In late 1999, plaintiff was transferred from a state prison in Wisconsin to PCF, which is a private prison facility then managed by Prison Health Services (PHS). Sometime before he was incarcerated, plaintiff injured his back and underwent two surgeries, leaving him with chronic back pain. While he was incarcerated in Wisconsin, he was given enough pain medication to adequately control his pain. This regimen, which apparently was based on an open prescription for Valium and Tylenol #3 (which

contains codeine), continued during plaintiff's initial months at PCF. In December, 2000, defendant became responsible for plaintiff's medical care. Defendant has been licensed to practice medicine in Minnesota since 1967. He is a family practitioner, who is now an independent contractor with Whitesell Medical Locums, Ltd., a company that has contracted to provide medical care for PCF inmates.

Defendant states that he determined plaintiff was addicted to Valium and codeine, and decided to taper down plaintiff's dosages of these substances to wean plaintiff off his addiction. In June, 2000, defendant reduced plaintiff's dosage of Tylenol #3 from four times per day to three times per day. Plaintiff complained and submitted grievances about this change, and the problem appears to have been solved to plaintiff's satisfaction.

On July 26, 2000, plaintiff learned that his medication regimen would be changed again, allowing him only one Tylenol #3 per day. For a period of time following July 26 – the record is unclear whether it is a few days or up to several weeks – plaintiff allegedly suffered a great deal of pain, as well as symptoms of withdrawal from the narcotics. The records show that on August 3, defendant told plaintiff that the Tylenol #3 and Valium were "not helping you very much." Defendant prescribed alternative drug therapies to address plaintiff's pain. The record does not clearly state how frequently plaintiff took this medication, but it does indicate that at least some of the time, plaintiff refused to take any medication that was not his original dosage. Plaintiff claims that during this time, defendant knew about his suffering, but "turned a deaf ear," ignoring his complaints. Defendant's submissions, and his notations in the medical records, indicate that his main reason for changing plaintiff's medication was to alleviate plaintiff's addiction.

In late August, defendant apparently allowed plaintiff to return to taking one Tylenol #3 per day, and it seems that plaintiff's pain was reduced. On October 24, plaintiff was examined by Dr. Thomas Bergman, a neurologist at the Hennepin County Medical Center. Subsequent to this examination, plaintiff's medication was again changed to include the drug Soma, apparently to plaintiff's satisfaction.

After an interlude of several months, during which it appears that defendant was not treating plaintiff, plaintiff was informed that defendant would again be responsible for his pain medication. Around this same time, the management contract for PCF was changed from Prison Health Services to the Corrections Corporation of America ("CCA"). According to defendant, CCA implemented a new prescription drug formulary system, which made it more difficult for doctors to prescribe narcotics for inmates. The record shows that on three occasions in April and July, 2001, defendant attempted to obtain Tylenol #3 and Soma for plaintiff. On each occasion, the request was denied by CCA's Corporate Medical Director, with the explanation that the requested drugs are addictive. It appears from the record that plaintiff was subsequently informed that he would be permitted to finish his remaining supply of these drugs, but afterwards he would not be able to receive any further doses of these medications. This latest episode spurred plaintiff's second request for summary judgment. Defendant cites CCA's new formulary policy, stating that even if he wished to prescribe Tylenol #3 and Soma for plaintiff, he would be unable to do so.

## ANALYSIS

### I. Objections to the Report and Recommendation

#### A. Defendant's Objections

##### 1. Sufficiency of Plaintiff's Allegations / Summary Judgment

Defendant first objects to the Magistrate Judge's finding that plaintiff has alleged sufficient facts to state a claim under the Eighth Amendment. To make a cognizable claim under the Eighth Amendment for failure to provide medical treatment, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

> An Eighth Amendment claim that prison officials were deliberately indifferent to the medical needs of inmates involves both an objective and a subjective component. The plaintiffs must demonstrate (1) that they suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.

*Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (citations omitted). As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment. *Dulany*, 132 F.3d at 1239. Furthermore, mere disagreement by a prisoner with the medical treatment he is receiving does not constitute a constitutional violation. *Lair v. Oglesby*, 859 F.2d 605, 606 (8th Cir. 1988).

In the present case, the Court finds that the Magistrate Judge correctly identified three key allegations that make plaintiff's Eighth Amendment claim sufficient. First, the Court finds that plaintiff has sufficiently alleged that he had a serious need for medical attention during the last several days of July, 2000. For example, plaintiff alleged in the

complaint that as a result of defendant changing his medication, plaintiff suffered pain in his back, legs, feet, and head, as well as "daily constant diarrhea and stomach cramps." Second, the Court finds that plaintiff has sufficiently alleged that defendant was aware of plaintiff's serious medical needs. As noted by the Magistrate Judge, defendant knew that plaintiff was addicted to painkillers, and the record shows that defendant acknowledged plaintiff's complaints of pain caused by the change in medication. Third, plaintiff has adequately alleged that defendant deliberately disregarded his needs. For example, plaintiff alleges in the complaint that defendant interfered with medication, which defendant knew was helping to alleviate plaintiff's pain. Given these alleged facts, the Court finds that plaintiff made sufficient allegations to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

Even though plaintiff has alleged sufficient facts to state a cognizable claim under the Eighth Amendment, it does not necessarily follow that his complaint must survive summary judgment. Accordingly, the Court must review whether defendant has met his burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact, and that defendant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrell*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c).

The Magistrate Judge recommended that defendant's motion for summary judgment be denied because, at the time, defendant had submitted virtually no evidence to demonstrate that he is entitled to judgment as a matter of law. Since the issuance of the Report and Recommendation, defendant has submitted a new affidavit, and medical records in response to plaintiff's second request for a temporary restraining order. The

temporary restraining order will be addressed in Part II of this Memorandum, but the Court may nevertheless consider defendant's new affidavit in deciding whether to grant summary judgment. *See* Fed. R. Civ. P. 56(c) (providing that summary judgment may rest on "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.").

The medical records attached to defendant's affidavit give a more complete picture of plaintiff's case. They demonstrate that defendant was, in fact, aware of plaintiff's condition, and they portray defendant as trying to alleviate plaintiff's pain and cure his addiction. Significantly, these medical records reveal that plaintiff refused to take the new medication prescribed by defendant. This refusal may have contributed to plaintiff's alleged pain and suffering. Although these documents shed more light on the case, in the Court's view they also raise a genuine issue of material fact – namely, whether plaintiff's suffering was caused by defendant's actions, or by his own refusal to take any medication at all rather than abide by a new regimen.

Furthermore, the Court is concerned about the incomplete nature of the medical records. In his second affidavit, defendant attached copies of plaintiff's medical records at the prison. While the Court has no reason to doubt the authenticity of these copies, it is clear from the record as a whole that the medical records are incomplete. The Court points specifically to the numerous "Inmate Medical Request Forms" attached to defendant's new affidavit and plaintiff's complaint. These forms are used by prisoners at PCF to request medical services. They provide a space for prisoners to describe their problems, and a space for the medical provider to address the prisoner's request.

Defendant submitted seven forms that are relevant to this inquiry, dated July 26, July 31, August 2, August 9, August 11, August 22, and September 16, 2000. On these forms, plaintiff's handwritten complaints are all answered with helpful-sounding responses from defendant, explaining to plaintiff the problem with addictive narcotics, and stating that defendant was doing his best to satisfy plaintiff's requests.[1] The submissions by plaintiff, however, tell a different story. Most notably, plaintiff's complaint includes eight forms, apparently submitted to defendant's attention over a four day period from July 27 through July 30, in which plaintiff vociferously complains of his pain and pleads for relief. The bottom of each page, however, contains no response at all from defendant. Defendant did not include these particular documents with his chronologically-ordered submission of medical records.

The Court finds that these discrepancies in the record reveal a significant factual dispute over the degree to which defendant was aware of plaintiff's condition during this

---

[1] A typical example is as follows, from a form dated July 31, 2000. In the section for patient's problem, plaintiff wrote:

> Dr. Schotzko: I apologize if I seemed a bit distraught! But sir, you or a specialist can't fix the pain from two back [surgeries], so please place meds as were when Dr. Glover approved them! Or at least every 12 hours – Tyl. #3 and [Valium] 5 mg until I go back to Wisconsin. At least I can do my job, and not be in constant pain! AGAIN! I APOLOGIZE! BUT I HURT BAD.

(Schotzko Affidavit Ex. B). Defendant responded:

> Mr. Parreant: I'm sorry you don't agree with my point of view, but, professionally, I cannot continue to provide you with addictive drugs. I do understand that you have chronic pain and will do the best I can to help, but I will not leave you addicted.

*Id.*

period. It is unclear from the pleadings and the record whether defendant's silence during these few days has a reasonable explanation, or is, as plaintiff claims, a demonstration of defendant's "turning a deaf ear" to plaintiff's pain. Because of these factual disputes, the Court overrules defendant's objection on this issue, and denies defendant's motion for summary judgment.[2]

### 2. Minnesota Malpractice Statute (Minn. Stat. § 145.682)

Defendant also objects to the Magistrate Judge's determination that Minn. Stat. § 145.682 is inapplicable to the present case. This provision of Minnesota law requires plaintiffs in malpractice actions to furnish affidavits by experts to support their claims. *See* Minn. Stat. § 145.682, subds. 2-3. As the Magistrate Judge noted, the face of the statute clearly provides that the requirement applies only to actions "alleging malpractice, error, mistake, or failure to cure, whether based on contract or tort . . . ." Minn. Stat.. § 145.682, subd. 2. This action by plaintiff is clearly a civil rights claim under 42 U.S.C. § 1983. It neither involves malpractice, nor arises under state law. Accordingly, the Court finds that Minn. Stat. § 145.682 is inapplicable to the present case, and overrules defendant's objection on this issue.

---

[2] In support of his motion for summary judgment, defendant cites a Report and Recommendation by U.S. Magistrate Judge Erickson in the case of *Williams v. Crist*, Civil Case No. 99-171, dated February 2, 2001. Although this Court is not bound by the decisions of another U.S. District Court, nor by the Report and Recommendation of a U.S. Magistrate Judge, the Court has reviewed the submission, and found that the case is inapposite. In *Williams*, the prisoner's conditions involved a broken finger and a scalp infection. These do not rise to the level of serious, incapacitating pain alleged by the plaintiff in the present case. Furthermore, in *Williams*, the Magistrate Judge determined that plaintiff presented no evidence whatsoever – beyond pure conjecture – to support his allegations of deliberate indifference.

### 3. Qualified Immunity

Defendant's final contention is that he is entitled to qualified immunity because he works at a prison that is "under the auspices of a state correctional system." The Magistrate Judge correctly noted, however, that defendant is the employee of a private corporation, not the government. Accordingly, the Court holds that, under the Supreme Court's holding in *Richardson v. McKnight*, 521 U.S. 399 (1997), defendant is not entitled to qualified immunity.

In *Richardson*, the Supreme Court held that guards at a privately-run prison were not entitled to invoke qualified immunity because, historically, prisons had been run by private entities without the protection of immunity. *See id.* at 404-407; *Raby v. Baptist Med. Ctr.*, 21 F. Supp. 1341, 1356 (M.D. Ala. 1998). The Court further held that marketplace and other pressures give private firms the same strong incentives to carry out their jobs that immunity provides to government employees. *Richardson*, 521 U.S. at 410. The Court noted that its holding was limited to a specific context, "one in which a private firm, systematically organized to assume a major lengthy administrative task (managing an institution) with limited direct supervision by the government, undertakes that task for profit and potentially in competition with other firms." *Id.* at 413.

This specific context is perfectly analogous to the present case. Defendant is not an employee of any government. He is an independent contractor for Whitesell Medical Locums, Ltd., which has an arrangement to perform medical services at the PCF, where plaintiff is incarcerated. The prison is managed by another private company, Corrections Corporation of America. Prior to April, 2001, the prison was managed by Prison Health

Services. Both of these organizations (CCA and PHS) are large national corporations, organized to assume the major lengthy administrative task of managing a prison. They have limited direct supervision by the government, they operate for profit, and potentially compete with other firms. Therefore, *Richardson* "supports the conclusion that private entities providing medical care or treatment to inmates may not raise a defense of qualified immunity." *Nelson v. Prison Health Services, Inc.*, 991 F. Supp. 1452, 1462 (M.D. Fla. 1997). In *Nelson*, which involved PHS as a defendant, the court held that the

> private provision of medical care . . . to inmates appears to have been historically commonplace, [without] the immunity traditionally afforded public functions . . . . Similarly, the same marketplace pressures that guard against a private prison guard's becoming overly timid in his or her duties, also guard against a private medical provider's becoming overly timid in his or her treatment of inmates.

*Id.* (citations omitted).

Defendant claims that by virtue of his being subject to suit under 42 U.S.C. § 1983, he must therefore be entitled to qualified immunity. This is incorrect. The Supreme Court has clearly stated that "§ 1983 **immunity** does not automatically follow § 1983 **liability**." *Richardson*, 521 U.S. at 412 (emphasis added). Therefore, defendant can be sued for acting under color of state law, but he still is not entitled to qualified immunity. In the present case, defendant does not even work for the prison management company. Thus, he is one step further removed from public employment than the parties in *Richardson* and *Nelson*. The Court therefore finds that defendant is not entitled to qualified immunity, and defendant's objections in this regard are overruled.

**B. Plaintiff's Objections**

By the Court's count, plaintiff has made fifteen separate objections to the Magistrate Judge's Report and Recommendation. The majority of these seem to be arguments over the Magistrate Judge's wording of certain passages in his recital of the facts, challenges to the defendant's allegations, and arguments over the sufficiency of plaintiff's factual allegations. At the core of all these objections appears to be plaintiff's assertion that his factual allegations are true. It is not this Court's role to determine the truth of any factual allegations; that is the jury's job. The Court has determined in Part I.A.1 of this Memorandum that plaintiff has alleged sufficient facts to state a claim under the Eighth Amendment, and that there are disputed genuine issues of material fact in this case. Therefore, the plaintiff will have an opportunity to try his facts in the appropriate forum. Plaintiff's fact-based objections, however, must be overruled.

The remainder of plaintiff's proper objections address the Magistrate Judge's determination that plaintiff did not submit sufficient evidence to justify re-imposing his old medication regimen. The Court adopts the Magistrate Judge's determinations in this regard, and finds that plaintiff has not submitted any medical evidence, other than his own views, that would support reinstating his prior medication regimen. Accordingly, plaintiff's objections in this regard are overruled.

Plaintiff's last two "objections" deal with the Magistrate Judge's Order on plaintiff's discovery motions filed April 20, 2001 and June 21, 2001. Because these discovery motions are nondispositive pretrial matters, the Magistrate Judge issued an

Order under D. Minn. LR 72.1(b)(1) [Docket No. 61].[3] Although it is contained within the same document, this Order is not part of the Report and Recommendation, and is not subject to objection under D. Minn. LR 72.1(c)(2). Therefore, the Court will consider these to be appeals of the Magistrate Judge's Order, under D. Minn. LR 72.1(b)(2).[4] The difference between an appeal and an objection is significant, because a reviewing District Court gives more deference to Orders than it does to Reports and Recommendations. Portions of Reports and Recommendations to which objections are made are reviewed de novo, while appealed Orders are set aside only if they are clearly erroneous or contrary to law. D. Minn. LR 72.1(c)(2), -(b)(2). *See also* 8 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). In this case, the Court has reviewed the Magistrate Judge's rulings on plaintiff's

---

[3] D. Minn. LR 72.1(b)(1) provides:

> In accordance with 28 U.S.C. § 636(b)(l)(A), and after consideration of Fed. R. Civ. P. 16(b), as amended August 1, 1983, a Magistrate Judge may hear and determine any pretrial motion or other matter, other than those motions specified in Subsection (c), *infra* . . . .

[4] D. Minn. LR 72.1(b)(2) provides:

> Any party may appeal from a Magistrate Judge's determination made under this rule within 10 days after service of the Magistrate Judge's order, unless a different time is prescribed by the Magistrate Judge or a Judge. Such party shall file with the Clerk of Court, and serve on all parties written notice of appeal which shall specifically designate the order or part thereof appealed from and the basis for objection thereto. A Judge of the Court shall consider the appeal and set aside any portion of the Magistrate Judge's order found to be clearly erroneous or contrary to law. The Judge may also reconsider any matter sua sponte. Any party appealing from a Magistrate Judge's order shall file a brief. Any brief accompanying an appeal from a Magistrate Judge's order must be served and filed within 10 days of service of the order. Other parties may respond to the brief within 10 days after being served with it. All briefs filed under this rule shall be limited to 10 pages.

two discovery motions, and can find nothing that is clearly erroneous or contrary to law. Accordingly, plaintiff's appeal of the Magistrate Judge's rulings on the discovery motions is denied.

## II. Plaintiff's Second Motion for Temporary Restraining Order

In a letter to the Magistrate Judge dated July 26, 2001, plaintiff sought to bar defendant (and his associates at PCF) from altering plaintiff's existing pain medication program. The Magistrate Judge construed this letter as a request for a temporary restraining order. Because many of the issues relevant to this request are intertwined with those in the Report and Recommendation, the Court now addresses plaintiff's second motion for a temporary restraining order.

In deciding whether to grant temporary injunctive relief, the Court must consider whether: (1) plaintiff faces irreparable harm if the order is denied, (2) the balance of harms favors plaintiff, (3) plaintiff will probably succeed on the merits of his claims, and (4) the public interest favors granting the order. *Dataphase Systems, Inc. v. C.L. Systems, Inc.*, 640 F.2d 109, 114 (8th Cir. 1981). None of these factors by itself is determinative; rather, in each case the four factors must be balanced to determine whether they tilt toward or away from granting a preliminary injunction. *West Pub. Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219, 1222 (8th Cir. 1986). The moving party bears the burden of proof on the four factors. *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987).

**A. Irreparable Harm**

The Court finds that plaintiff has not alleged facts demonstrating that he will suffer irreparable harm if his medication schedule is changed. Although the Court acknowledges that this change may cause plaintiff considerable pain and discomfort, there is no evidence in the record to support plaintiff's assertions that such harm is irreparable. Plaintiff points out that the damage to his spine and back is already irreparable. This harm, however, occurred in the past. For the purposes of deciding plaintiff's motion, the Court is only concerned with new harm that may occur if the temporary restraining order is not issued. Although plaintiff has alleged that failure to maintain his current medication might result in paralysis, he has provided absolutely no evidence for this assertion. Furthermore, plaintiff has previously been taken off his medication. Although he apparently went through considerable pain and discomfort, this harm was eliminated when his dosage was restored. The Court therefore determines that the harm plaintiff apprehends, while potentially severe, is not irreparable.

**B. Balance of Harms**

The Court must consider whether the potential detriment to the defendant from granting the injunction would outweigh any threat of irreparable harm to the plaintiff. In the opinion of the Court, plaintiff has shown that the balance of harms would favor issuing the injunction, **provided that** there was a threat of irreparable harm. Assuming for the moment that plaintiff would be harmed as much as he alleges, it is clear that the physical pain and suffering imposed on plaintiff would be more severe than the

difficulties imposed on defendant, if defendant was forced to prescribe the addictive medication. Thus, the balance of harms seems to favor plaintiff.

**C. Probability of Success on the Merits**

Here, the Court finds that plaintiff's probability of success is extremely low. Although, as the Court has pointed out, there are triable issues of fact in this case, the evidence currently in the record does not strongly support plaintiff. Much of the record is comprised of plaintiff's subjective opinions. These are supplemented by medical reports, which seem, for the most part, to defeat the perception that defendant deliberately ignored plaintiff's suffering. Furthermore, plaintiff's own submission to this Court admits that plaintiff is willing to prescribe the medication that plaintiff desires, but is constrained by the formulary system set up by CCA. Therefore, the Court finds that there is a low probability of plaintiff succeeding on the merits.

**D. Public Interest**

Plaintiff argues that there is a strong public interest in preventing unnecessary pain and suffering by prisoners. He also asserts a public interest in preventing prison doctors from interfering with the successful treatment and medication of prisoners. While these contentions are undeniably true, plaintiff has not offered evidence that the public interest would be served in this case by preventing defendant from changing plaintiff's medication schedule and dosage.

Upon examining all the evidence and considering the four factors, the Court concludes that plaintiff has not met his burden of proof. The balance of the equities

weighs against granting plaintiff's motion for a temporary restraining order, and accordingly, it is denied.

**ORDER**

Based on the foregoing, of all the records, files, and proceedings herein, the Court **OVERRULES** defendant's objections [Docket No. 70], **OVERRULES** plaintiff's objcctions [Docket No. 65] and **ADOPTS** the Magistrate Judge's Report and Recommendation [Docket No. 62]. Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant's "Motion to Dismiss and For Summary Judgment" [Docket No. 27] is **DENIED**.

2. Plaintiff's motion for a temporary restraining order [Docket No. 7] is **DENIED**.

3. Plaintiff's motion for a preliminary injunction [Docket No. 9] is **DENIED**.

4. Plaintiff's motion for summary judgment [Docket No. 32] is **DENIED**.

**IT IS FURTHER HEREBY ORDERED:**

5. The Order of the Magistrate Judge [Docket No. 61] is **AFFIRMED;** and

6. Plaintiff's second motion for a temporary restraining order [Docket No. 58] is **DENIED**.

DATED: Sept. 30, 2001
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge

**Please forward this announcement to the recipient of this fax.**

---

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

## For additional information on either program please visit our website at www.mnd.uscourts.gov.

---

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500