**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**LOUIS WILLIAM PARREANT,**

Plaintiff,

v.

**JOHN SCHOTZKO; PRAIRIE CORRECTIONAL FACILITY; and CORRECTIONS CORPORATION OF AMERICA,**

Defendants.

Civil No. 00-2014 (JRT/JGL)

**REPORT AND RECOMMENDATION**

APPEARANCES

Louise William Parreant, pro se.

Gregory Wayne Deckert, Esq., for Respondent John Schotzko.

Robert M. Lewis, Esq., for Respondents Prairie Correctional Facility and Corrections Corporation of America.

JONATHAN LEBEDOFF, United States Magistrate Judge

The above-entitled matter is before the undersigned Magistrate Judge of District Court on Plaintiff Louis William Parreant's Letter Motions For Court's Help to Order and Stop Termination of Medication (Doc. No. 101) and For Court to Act and Intervene to Stop Plaintiff's Medications From Being

FILED APR 3 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Denied or Terminated (Doc. No. 103). This matter has been referred to the undersigned pursuant 28 U.S.C. § 636 and D. Minn. LR 72.1(c).

## I. FACTUAL BACKGROUND

Plaintiff Parreant alleges that his federal constitutional rights are being violated during his confinement at Prairie Correctional Facility ("PCF") in Appleton, Minnesota. Specifically, Plaintiff claims that since being transferred from a Wisconsin prison to PCF, he is being denied the medications necessary to control his chronic back pain. Defendant John Schotzko is a doctor who treated Plaintiff at PCF. Corrections Corporation of America ("CCA") is PCF's parent company. Plaintiff has filed suit under 42 U.S.C. § 1983.

In late 1999, Plaintiff was transferred from a Wisconsin prison to PCF. Prior to his incarceration, Plaintiff injured his back and underwent two surgeries which left him with chronic back pain. While incarcerated in Wisconsin, Plaintiff received Valium and Tylenol #3 (which contains codeine) to control his back pain. These medications were apparently continued during Plaintiff's first few months at PCF. In December 1999, Defendant Schotzko became responsible for Plaintiff's health care. Defendant Schotzko concluded that Plaintiff was addicted to Valium and codeine and decided to taper down Plaintiff's dosages of these substances to wean Plaintiff from the addictive drugs. In June 2000, Defendant Schotzko reduced Plaintiff's dosage of Tylenol #3 from four times per day to three times per day. Plaintiff complained and

submitted grievances about this change, and the problem appears to have been resolved to Plaintiff's satisfaction.

On July 26, 2000, Plaintiff learned that his medication regimen would be changed to allow him only one Tylenol #3 per day. For a period of time following July 26, 2000, Plaintiff allegedly suffered intense pain and withdrawal symptoms. The record is unclear as to whether this period lasted a few days or up to several weeks. Defendant Schotzko prescribed alternative drug therapies for Plaintiff during this time period, but it is unclear how often Plaintiff complied with the new treatment regimen. It is clear that, at least some of the time, Plaintiff refused to take any medications which were not at his pre-PCF dosages. Plaintiff claims that during this time, Defendant knew about his suffering, but "turned a deaf ear" to his complaints. Defendant states that his main reason for changing Plaintiff's medication was to alleviate Plaintiff's addiction.

In late August 2000, Defendant Schotzko apparently allowed Plaintiff to receive one Tylenol #3 per day, and it seems that Plaintiff's pain was reduced. On October 24, 2000, Plaintiff was examined by Dr. Thomas Bergman, a neurologist at the Hennepin County Medical Center. Subsequent to this examination, the drug Soma was added to Plaintiff's treatment regimen.

After a period of several months, during which it appears that Defendant Schotzko was not treating Plaintiff, Defendant Schotzko again

became responsible for Plaintiff's health care. Around the same time, Defendant CCA took over management of PCF. According to Defendant Schotzko, CCA implemented a new prescription drug formulary system, which made it more difficult for doctors to prescribe narcotics for inmates. The record demonstrates that on three occasions from April to July 2001, Defendant Schotzko attempted to obtain Tylenol #3 and Soma for Plaintiff. However, CCA's Corporate Medical Director denied the requests because the drugs are addictive. Defendant Schotzko states that even if he wished to continue prescribing Tylenol #3 and Soma for Plaintiff, he would be unable to do so under CCA's new formulary policy.

## II. DISCUSSION

Plaintiff's instant motions request an order preventing CCA and Defendant Schotzko from discontinuing his Tylenol #3 and Soma prescriptions once he finishes his current supply of the drugs. At the time of Plaintiff's previous motions for injunctive relief, it appeared that Plaintiff would be allowed to finish his then-remaining supplies of these drugs, but would not be allowed to receive any more of these medications. However, Plaintiff's instant motions and supporting documents indicate that Plaintiff is currently receiving Tylenol #3 and Soma and that the medications will be terminated in the near future when he finishes his current supplies.

Last summer and fall Plaintiff filed a series of motions which all requested an order requiring Defendants to treat Plaintiff with his pre-PCF medications. On September 30, 2001, the Honorable John R. Tunheim, United States District Court for the District of Minnesota, denied Plaintiff's motions. (Doc. No. 76 at 17.) In his order, Judge Tunheim not only addressed the issue of the sufficiency of PCF's proffered course of treatment (Doc. No. 76 at 12), but also the issue of potential harm should Plaintiff's Tylenol #3 and Soma prescriptions be discontinued. (Id. at14-17.) Moreover, this Court addressed the same issues in its Report and Recommendation and Order dated August 6, 2001. (Doc. Nos. 61 & 62 at 21-24.)

Plaintiff submits no new evidence with his current motions. Indeed, he is making the same arguments he made last summer and once again proffers no evidentiary support. Plaintiff once again cites the opinion of Dr. Bergman, the neurologist who examined him. As this Court previously stated: "Even if Plaintiff's interpretation of Dr. Bergman's report were accurate, that would not necessarily mean that the pre-PCF medication regimen is the only constitutional one. Plaintiff's resistance to change is understandable, but some change in his medication regimen, to wean him from addictive drugs, may be medically justifiable and constitutionally permissible." (Report & Recomm., Aug. 6, 2001 at 23 n.5.) Accordingly, for the reasons stated in this Court's August 6, 2001 Report and Recommendation and Judge Tunheim's

September 30, 2001 Order, the Court recommends that Plaintiff's motions should be denied.

Based upon the above, and upon all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED**:

(1) Plaintiff Louis William Parreant's Letter Motion For Court's Help to Order and Stop Termination of Medication (Doc. No. 101) should be **DENIED**; and

(2) Plaintiff Louis William Parreant's Letter Motion For Court to Act and Intervene to Stop Plaintiff's Medications From Being Denied or Terminated (Doc. No. 103) should be **DENIED**.

Dated: April 3, 2002

JONATHAN LEBEDOFF
United States Magistrate Judge

Under D. Minn. LR 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by April 19, 2002, a writing which specifically identifies those portions of this Report to which objections are being made and the basis of those objections. A judge shall make a de novo determination of those portions to which objection is made. Failure to comply with this procedure may operate as

a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after being served with it. All briefs filed under this rule shall be limited to ten pages.