**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

---

LOUIS WILLIAM PARREANT,

Plaintiff,

v.

JOHN SCHOTZKO and CORRECTIONS CORPORATION OF AMERICA,

Defendants.

Civil No. 00-2014 (JRT/JGL)

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION**

---

Louis William Parreant, Prairie Correctional Facility, Box 500 Appleton, MN 56208-0500, *pro se.*

Gregory W. Deckert, VEST & DECKERT, 6160 Summit Drive, Suite 360, Brooklyn Center, MN 55430, for defendant John Schotzko.

Sarah C. Madison and Rebecca A. Chaffee, BEST & FLANAGAN, 225 South Sixth St., Suite 4000, Minneapolis, Minnesota 55402, for defendant Corrections Corporation of America.

Plaintiff Louis Parreant ("Parreant") seeks relief under 42 U.S.C. § 1983 for alleged violations of his rights under the Eighth Amendment to the U.S. Constitution. This matter is now before the Court on Parreant's objections to the Report and Recommendation of United States Chief Magistrate Judge Jonathan G. Lebedoff dated August 12, 2002. The Court has conducted a *de novo* review of the objections pursuant

FILED 3-31-03
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD. 3-31-03
DEPUTY CLERK

to 28 U.S.C. § 636 (b)(1)(C) and D. Minn. LR 72.1(c)(2). For the reasons set forth below, the Court adopts the Report and Recommendation.

## BACKGROUND

### I. Procedural

Parreant is a prisoner of the State of Wisconsin. In late 1999 he was transferred from a state prison in Wisconsin to Prairie Correctional Facility ("PCF"), a private prison in Appleton, Minnesota that is operated by defendant Corrections Corporation of America ("CCA"). Defendant John Schotzko ("Schotzko") is a doctor who treated Parreant at PCF. Parreant originally filed this action in August 2000 against Schotzko. On September 30, 2001, this Court denied Schotzko's motion for summary judgment. *See Parreant v. Schotzko*, Civ. No. 00-2014, 2001 WL 1640137 (D. Minn. Sept. 30, 2001). On November 30, 2001, Parreant filed an amended complaint, joining CCA as a defendant.[1] Both defendants have filed motions for summary judgment, and Parreant has also filed a motion for summary judgment. On August 12, 2002, the Magistrate Judge issued a Report and Recommendation finding that Parreant has not demonstrated a genuine issue of material fact on the question of whether defendants were deliberately

---

[1] As the Magistrate Judge noted, Parreant apparently also tried to add PCF itself and several individual PCF employees as defendants. CCA states that PCF is not an entity that can be sued, but is simply a facility owned by CCA. Furthermore, the record shows that the individual employees listed in Parreant's Amended Complaint were never served with process. The Magistrate Judge is therefore correct that because only Schotzko and CCA have been properly served, they are the only defendants in this case.

indifferent to his serious medical needs. The Magistrate Judge therefore recommended granting defendants' motions for summary judgment and denying Parreant's motion.

## II. Factual

Sometime before he was incarcerated, Parreant underwent two back surgeries, leaving him with chronic back pain. While he was incarcerated in Wisconsin, he was given enough pain medication to adequately control his pain. This regimen, which apparently was based on an open prescription for Valium and Tylenol #3 (which contains codeine), continued during Parreant's initial months at PCF. In May 2000, Schotzko became Parreant's physician. Schotzko determined that Parreant was addicted to Valium and codeine, and decided to taper down Parreant's dosages of these substances to wean him of his addiction.

Schotzko implemented a new medication regimen for Parreant beginning on Thursday, July 27, 2000. This program allowed Parreant only one Tylenol #3 per day. As a substitute, Schotzko prescribed Darvocet, another pain reliever, which Schotzko claims performs the same functions as Tylenol #3. Parreant refused to take Darvocet, claiming that he had tried it before, it did not stop his pain, and it caused him bad side effects. Over the following three days – Friday, July 28, Saturday, July 29, and Sunday, July 30 – Parreant suffered severe withdrawal pains, and filed several grievances against Schotzko. Schotzko, however, was not working on those three days, and he claims that he never saw the grievance forms. Schotzko was apparently unaware of Parreant's pain until he returned to work at PCF on Monday, July 31. On that day, Schotzko met with

Parreant to discuss his plans for weaning Parreant off codeine. Schotzko offered to prescribe the muscle relaxant Baclofen as a substitute for Valium, but Parreant refused to take it.

Over the next two months, Schotzko continued to adjust Parreant's medication, sometimes cutting off Tylenol #3 and Valium altogether, other times allowing certain dosages of those drugs in combination with other medications. Schotzko always prescribed alternate medications that he claimed would do the same job as Tylenol #3 and Valium. Sometimes Parreant would take these medications and sometimes he would not. In October 2000, Parreant was examined by Dr. Thomas Bergman ("Bergman"), a neurologic surgeon from outside PCF. Upon Bergman's recommendation, Parreant was prescribed a muscle relaxant called Soma to supplement his pain medications. Parreant apparently found this satisfactory in treating his pain.

On September 7, 2001, Parreant's prescriptions for Tylenol #3 and Soma were apparently stopped, and he suffered more withdrawal symptoms. On September 14, Parreant again received Soma and Xanax, and the following day he received Tylenol #3. The record contains no evidence that either defendant was responsible for this interruption in Parreant's medication. In fact, the record shows that during the summer of 2001 Schotzko tried to obtain Tylenol #3, Xanax, and Soma for Parreant. The evidence shows, however, that CCA's medical director rejected these requests. Schotzko has stated that prescriptions for Valium, Tylenol #3, and Soma were "routinely rejected" by CCA because these drugs were not listed in the approved "formulary" list of medications available to PCF inmates. CCA contends that any delay in Parreant's medication in

September 2001 was caused by an inadvertent oversight or by the implementation of a legitimate penological interest.

## ANALYSIS

### I. Summary Judgment Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. Only disputes over facts that might affect the outcome of the suit under the governing substantive law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not appropriate if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the nonmoving party. *Id.*

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record. *Vette Co. v. Aetna Casualty & Surety Co.*, 612 F.2d 1076, 1077 (8th Cir. 1980). However, the nonmoving party may not merely rest upon

allegations or denials in its pleadings, but it must set forth specific facts by affidavits or otherwise showing that there is a genuine issue for trial. *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002).

## II. Deliberate Indifference

Parreant alleges that Schotzko and CCA were deliberately indifferent to his serious medical needs, thus violating the Eighth Amendment to the U.S. Constitution. To make a cognizable claim under the Eighth Amendment for failure to provide medical treatment, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). To demonstrate deliberate indifference, Parreant must establish that: (1) he suffered objectively serious medical needs; (2) defendants actually knew about those needs; and (3) defendants deliberately disregarded those needs. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). Although prison officials must not be deliberately indifferent to a prisoner's medical needs, prisoners have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment. *Id. See Lair v. Oglesby*, 859 F.2d 605, 606 (8th Cir. 1988) (holding that a prisoner's disagreement with the medical treatment he or she receives does not constitute a constitutional violation).

The Court agrees with the Magistrate Judge that Parreant has sufficiently alleged that he had serious medical needs and that defendants were aware of those needs. (*See* R&R at 9-10.) The Magistrate Judge found that the only disputed question was whether

defendants acted with deliberate indifference to Parreant's serious medical needs. The Magistrate Judge concluded that they did not, and Parreant objects to this finding. The Court will separately address Parreant's objections regarding each defendant.

### A. Dr. Schotzko

In its September 30, 2001 Order, this Court denied Schotzko's motion for summary judgment primarily because the record contained crucial gaps, leaving in doubt whether Schotzko ignored Parreant's pleas for help between July 28-30, 2000, after the doctor reduced Parreant's Tylenol #3 dosage. The record then showed that Parreant sent Schotzko several requests for medical assistance, graphically describing his pain, but that Schotzko did not respond. The Court found that this gap in the record created a genuine question of material fact as to whether Schotzko "turned a deaf ear" to Parreant's suffering. *See Parreant*, 2001 WL 1640137 at *4. As the Magistrate Judge noted in his latest Report and Recommendation, that gap has now been filled by a further affidavit from Schotzko. This affidavit explains that Schotzko was not working on those crucial days, and never saw the notes requesting medical attention. Parreant does not dispute any of the key facts in Schotzko's affidavit. The affidavit demonstrated that Schotzko exercised his professional judgment, trying to wean Parreant of his addiction to codeine and Valium. The Magistrate Judge determined that Parreant's disagreement with Schotzko was just that – a disagreement – over the proper medical treatment for his back pain.

Parreant objects to this finding, but his objections presume that Schotzko's course of treatment was inappropriate and inferior to Parreant's preferred regimen. Parreant cites the *Physician's Desk Reference* and makes other medical arguments to demonstrate that Schotzko's treatment, "though well-meaning," was improper. (Obj. at 7.) Parreant also suggests, without any evidentiary support, that Schotzko's recommended treatment was possibly dangerous to his health. These objections all relate to the quality or appropriateness of Schotzko's treatment, not to whether the doctor was deliberately indifferent to Parreant's condition. The quality of Schotzko's care is not at issue here. Even if Schotzko was guilty of malpractice – and the evidence does not suggest that he was – this would still not warrant a conclusion that he acted with deliberate indifference. *See Gamble*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.")[2] The record shows that Schotzko was diligent in trying to alleviate Parreant's back pain while at the same time cure him of an addiction.[3] Parreant's objections do little more than argue about the appropriateness of Schotzko's choice of treatments. As the Magistrate Judge noted, this is not sufficient to state a claim for deliberate indifference under the Eighth Amendment. *See Jolly v.*

---

[2] The Court agrees with Schotzko that Parreant's claims could not serve as the basis of a medical malpractice claim under Minnesota law unless Parreant provided an expert affidavit as specified in Minn. Stat. § 145.682.

[3] Schotzko notes that in many instances, Parreant refused to take the replacement medications that the doctor prescribed. In its September 2001 Order, the Court suggested that this might create the factual issue of whether Parreant's suffering was caused by the doctor's actions or by his own failure to take the suggested medication. With the new evidence in the record showing that Schotzko was at all times attentive to Parreant's needs, the Court now agrees with Schotzko that even if Parreant suffered pain due to Schotzko's treatment of his addiction, it does not raise a factual issue regarding indifference.

*Knudson*, 205 F.3d 1094, 1096 (8th Cir. 2000) ("[M]ere disagreement with treatment decisions does not rise to the level of a constitutional violation.") (quoting *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995); *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996) ("Prison officials do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment.") Therefore, because Parreant's objections do not raise a genuine issue of material fact, the Court will adopt the Report and Recommendation as to Schotzko, and will grant Schotzko's motion for summary judgment.

**B. CCA**

The Magistrate Judge determined that Parreant also did not demonstrate a genuine issue of material fact as to whether CCA was deliberately indifferent to his serious medical needs. Specifically, the Magistrate Judge found that Parreant did not identify any CCA corporate policy or custom that caused a violation of his Eighth Amendment rights. (*See* R&R at 14-16.) Parreant objects, claiming that CCA does have a "pattern and practice" that rises to the level of custom, and which led CCA to be deliberately indifferent. It is somewhat unclear what this "pattern or practice is," but it seems Parreant is alleging that CCA's maintenance of a formulary system of medications led CCA to be deliberately indifferent to his needs. Parreant supports these allegations by noting that many of his requests for non-formulary medications were rejected.[4] Parreant

[4] The record also shows that Parreant continued to receive non-formulary prescriptions, though not always in the amount that Parreant sought.

also suggests that CCA's failure to transfer him back to a Wisconsin state prison constitutes deliberate indifference.

Parreant's objections add up to little more than general dissatisfaction with the fact that CCA makes it more difficult for Parreant to receive his preferred medication. Parreant, however, has presented no evidence of a policy or custom that caused CCA to be deliberately indifferent to his serious medical needs in September 2001 or at any other time.[5] Because Parreant cannot identify such a policy, the Court agrees with the Magistrate Judge that he has not demonstrated a genuine issue of material fact as to the question of whether CCA was deliberately indifferent to his serious medical needs. *See Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975-76 (8th Cir. 1993) ("[A] corporation acting under color of state law will only be held liable under § 1983 for its own unconstitutional policies."). Therefore, the Court will adopt the Report and Recommendation as to the claim against CCA, and will grant CCA's motion for summary judgment.

Because the Court finds that both defendants are entitled to summary judgment, the Court also adopts the Magistrate Judge's recommendation that Parreant's motion for summary judgment must be denied.

[5] CCA did not take over health care responsibilities at PCF until around April 2001. Therefore, CCA could have had no role in the interruption in Parreant's medication in the summer of 2000.

**ORDER**

Based on the foregoing, of all the records, files, and proceedings herein, the Court hereby **OVERRULES** plaintiff's objections [Docket No. 138] and **ADOPTS** the Report and Recommendation of the United States Magistrate Judge, dated August 12, 2002 [Docket No.136]. Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant Corrections Corporation of America's Motion for Summary Judgment [Docket No. 106] is **GRANTED**.

2. Defendant John Schotzko's Motion for Summary Judgment [Docket No. 118] is **GRANTED**.

3. Plaintiff Louis Parreant's Motion for Summary Judgment [Docket No. 124] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: March 31, 2003
at Minneapolis, Minnesota.

John R. Tunheim
JOHN R. TUNHEIM
United States District Judge

# UNITED STATES DISTRICT COURT
## District of Minnesota

700 Federal Building
316 North Robert Street
St. Paul, MN 55101

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

417 Federal Building
515 West First Street
Duluth, MN 55802

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

> ***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or
2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or
3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or
4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.